1  Michael J.D. Sweeney, Esq. (pro hac vice)
2  msweeney@getmansweeney.com
   Matt Dunn, Esq. (pro hac vice)
3  mdunn@getmansweeney.com
4  **GETMAN & SWEENEY, PLLC**
   9 Paradies Lane
5  New Paltz, NY 12561
   Telephone:   (845) 255-9370
6  Facsimile:   (845) 255-8649
7
8  Jason C. Marsili
   jmarsili@posner-rosen.com
9  **POSNER & ROSEN LLP**
   3600 Wilshire Blvd., Suite 1800
10 Los Angeles, CA 90010
   Telephone: (213) 389-6050
11 Facsimile: (213) 389-0663
12
13 Attorneys for Plaintiffs
14
15              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
16
17 **BARBARA FLORES, on behalf of**        Case No. CV 14-2900- AB-E
   **herself and those similarly situated,**
18                                          **BRIEF IN SUPPORT OF**
              **Plaintiffs,**              **PLAINTIFFS' UNCONTESTED**
19                                          **NOTICE OF MOTION AND**
        **v.**                             **MOTION FOR COURT**
20                                          **APPROVAL OF THEIR FLSA**
   **SWIFT TRANSPORTATION**                 **SETTLEMENTS**
21 **COMPANY, et al.,**
                                            **Hearing Date: May 2, 2016**
22            **Defendants.**
                                            **Time: 10:00 a.m.**
23
                                            **Assigned to: Honorable André**
24                                          **Birotte Jr.**
25
26
27
28

1

**Table of Contents**

2   TABLE OF AUTHORITIES ..........................................................................ii

3   I.   PROCEDURAL AND FACTUAL HISTORY ....................................... 1

4     A. The Litigation.................................................................................... 3

5     B. Settlement.......................................................................................... 4

6   II.  LEGAL STANDARD .......................................................................... 7

7     A. A Bona Fide Dispute Exists Between the Parties ................................ 8

8     B. The Proposed Settlement Is Fair and Reasonable............................... 9

9        1.   The Settlement Is the Result Of Arms'-Length Negotiations ..................... 9

10       2.   Plaintiffs' Litigation Risks Are Significant ................................. 10

11       3.   Plaintiffs' Recovery Is Fair and Reasonable ............................. 10

12       4.   The Settlement's Release Provision Is Proper........................... 11

13    C. The Service Awards to the Named Plaintiff and Arbitration

14       Representative Are Fair And Reasonable ........................................... 12

15   III. THE COURT SHOULD APPROVE THE AGREED UPON

16       ATTORNEYS' FEES AS REASONABLE ....................................... 15

17    A. The Attorneys' Fees Are Reasonable Because All the Plaintiffs

18       Agreed to Them ............................................................................... 16

19    B. Fees of One Third of the Settlement Fund Method Are Reasonable................. 16

20    C. Costs................................................................................................. 21

21    D. Dismissal of the Rule 23 Class Claims Without Prejudice Is Proper............. 22

22   IV. CONCLUSION .................................................................................. 25

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips v. Walling,* 324 U.S. 490 (1945) ..........................................................15

*Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240 (1975) ..................................15

*Ambrosino v. Home Depot U.S.A, Inc.,* 11 Civ. 1319 L MDD, 2014 WL
    3924609 (S.D. Cal. Aug. 11, 2014)..............................................................passim

*Banales v. Autoclaims Direct, Inc.,* 3:11 Civ. 02914, Doc. 63 (Dec. 20,
    2012) .........................................................................................................16, 19

*Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981)..............7, 18

*Boyd v. Bank of Am. Corp.*, 13 Civ. 0561-DOC, 2014 WL 6473804 (C.D.
    Cal. Nov. 18, 2014) ......................................................................16, 19, 20, 21

*Bredbenner v. Liberty Travel, Inc.*, 09 Civ. 1248 MF, 2011 WL 1344745
    (D. N.J. Apr. 8, 2011) ............................................................................18

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 706 (1945) .............................................7

*Campanelli v. Hershey Co.*, C 08–1862 BZ, 2011 WL 3583597 (N.D. Cal.
    May 4, 2011).............................................................................................8

*Campbell v. C.R. Eng., Inc.,* 2:13 Civ. 00262, 2015 WL 5773709 (D. Utah
    Sept. 30, 2015)........................................................................................15

*Costa v. Commissioner of Social Sec. Admin.*, 690 F.3d 1132 (9th Cir.
    2012) ..............................................................................................20, 21

*Craft v. Cnty. of San Bernardino*, 624 F.Supp.2d 1113 (C.D. Cal. 2008) ...............21

*Curtis-Bauer v. Morgan Stanley & Co. Inc.*, C-06-3903 TEH, 2008 U.S.
    Dist. LEXIS 91465 (N.D. Cal. Oct. 22, 2008) ..................................................14

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326 (1980) ...............15

*Diaz v. Scores Holding Co., Inc.,* 07 Civ. 8718 WL 6399468 (S.D. N.Y.
    Jul.11, 2011) ............................................................................................10

*Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401 (9th Cir. 1989) ............22, 23

*Dunn v. Teachers Ins. & Annuity Assn. of Am.*, 13 Civ. 05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016) ................................................................24

*Elliott v. Rolling Frito-Lay Sales, LP*, 11 Civ. 01730 DOC, 2014 WL 2761316 (C.D. Cal. June 12, 2014) ............................................................15, 20

*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) ........................12

*Garner v. State Farm Mut. Auto. Ins. Co.*, 08 Civ. 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................................................................14

*Glass v. UBS Fin. Services, Inc.*, 06 Civ. 4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009 (unpublished) ................................................................................................14

*Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579 (S.D. Cal. 2010)............................23

*Goodwin v. Citywide Home Loans, Inc.*, 8:14 Civ. 00866-JLS-JCG, Doc. 66 (C.D. Cal Nov. 2, 2015) ............................................................................passim

*Graham v. Overland Solutions, Inc.*, 10 Civ. 0672 BEN, 2012 WL 4009547 (S.D. Cal. Sept. 12, 2012) ................................................................14

*Hand v. Dionex Corp.*, 06 Civ. 1318-PHX-JAT, 2007 WL 3383601 (D. Ariz. Nov. 13, 2007) ........................................................................................10

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............22

*In re Media Vision Tech Sec. Litigs.*, 913 F. Supp. 1362 (N.D. Cal. 1996).............21

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)................17

*Jones v. Agilysys, Inc.*, 12 Civ. 03516 SBA, 2014 WL 2090034 (N.D. Cal. May 19, 2014)................................................................................................11

*Khanna v. Intercon Sec. Sys., Inc.*, 2:09 Civ. 2214 KJM EFB, 2014 WL 1379861 (E.D. Cal. Apr. 8, 2014) order corrected, 2:09 Civ. 2214 KJM EFB, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015) ......................................17

*Knight v. Red Door Salons, Inc.*, 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................................................................................17

*Lee v. The Timberland Co.*, C 07-2367, 2008 WL 2492295 (N.D. Cal. Jun 19, 2008) ........................................................................................ 8

*Lewis v. Wells Fargo & Co.*, 08 Civ. 2670, Doc. 315 (N.D. Cal. April 29, 2011) ................................................................................... 10, 14

*Luo v. Zynga Inc.*, 13 Civ. 00186 NC, 2014 WL 457742 (N.D. Cal. Jan. 31, 2014) ................................................................... 22, 23, 24

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ........... 7, 8

*Ma v. Covidien Holding, Inc.*, 12 Civ. 02161-DOC (RNBx), 2014 WL 360196 (C.D. Cal. 2014) ......................................................... 11

*Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 795, 184 L. Ed. 2d 583 (U.S. 2012) .......................... 7

*McCowen v. Trimac Transp. Services (W.), Inc.*, 14 Civ. 02694-RS, 2015 WL 9311914 (N.D. Cal. Dec. 23, 2015) ...................................... 23

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) .................................... 21

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ........................ 21

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 11

*Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324 (N.D. Cal. 2014) ...................... 10

*Otey v. CrowdFlower, Inc.*, 12 Civ. 05524–JST , 2014 WL 1477630 (N.D. Cal. 2014) ............................................................................. 7

*Otey v. CrowdFlower, Inc.*, 12 Civ. 05524-JST, 2016 WL 304747 (N.D. Cal. Jan. 26, 2016) ............................................................... 8

*Rodriguez v. SGLC Inc.*, 2:08 Civ. 1971-MCE-KJN, 2014 WL 229221 (E.D. Cal. Jan. 17, 2014) ............................................................... 17

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................ 12

*Satchell v. Fed. Express Corp.*, C-03-2659 SI, C-03-28 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................ 14

iv

*Stevens v. Safeway, Inc.*, 2:05 Civ. 01988-MMM-SH, Doc. 338 (C.D. Cal. Feb. 25, 2008) ............................................................................ 14

*Stuart v. Radioshack Corp.*, 07 Civ. 4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) ........................................................... 13

*Trauth v. Spearmint Rhino Companies Worldwide, Inc.*, EDCV 09-01316-VAP, 2012 WL 4755682 (C.D. Cal. Oct. 5, 2012) ........................... 8

*Trinh v. JPMorgan Chase & Co.,* 07 Civ. 01666, 2009 WL 532556 (S.D. Cal. Mar. 03, 2009) .......................................................... 8

*Van Vranken v. Atl. Richfield Co.,* 901 F.Supp. 294 (N.D. Cal. 1995) .................... 21

*Vandervort v. Balboa Capital Corp.*, 8 F.Supp.3d 1200 (C.D. Cal. 2014) .............. 17

*Velez v. Majik Cleaning Service, Inc.*, 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783 (S.D. N.Y. June 25, 2007) ........................................ 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................... 21

*Wallace v. Countrywide Home Loans Inc.*, SACV 08–1463–JST (MLGx), 2013 WL 1944458 (C.D. Cal. Apr. 29, 2013) ....................................... 9

*Yue Zhou v. Wang's Rest.*, C 05-0279 PVT, 2007 WL 2298046 (N.D. Cal. Aug. 8, 2007) .................................................................. 8

**Statutes**

29 U.S.C. § 202 ............................................................................... 20

29 U.S.C. § 202(a) ............................................................................ 7

29 U.S.C. § 215(b) ............................................................................ 7

29 U.S.C. § 255 ................................................................................ 8

**Rules**

Fed. R. Civ. P. 23(e) ...................................................................... 22

**Treatises**

NERA Economic Consulting, "Trends in Wage and Hour Settlements:
2015 Update" .................................................................................................... 11

The Plaintiffs who have opted into this action submit this brief in support of their uncontested motion for approval of the settlement of the Fair Labor Standards Act ("FLSA") claims raised in this case. Each of the 41 Plaintiffs who have brought claims in this action have signed an individual settlement agreement with Swift resolving his or her FLSA and state wage-and-hour claims in their entirety. Now they respectfully request that the Court approve their settlements, including their individual recoveries, service awards, and the attorneys' fees and costs. Plaintiffs also request that the Court dismiss the California state law class claims raised in the complaint but not certified for class treatment.

## I.      PROCEDURAL AND FACTUAL HISTORY

The Named Plaintiff brought this action as a FLSA collective action on behalf of herself and other customer service representatives employed by Swift who were paid a salary but not overtime wages for hours worked more than 40 in a workweek. ("CSRs") Complaint, Dkt. 1 (filed April 15, 2014). She also brought California state law claims for unpaid wages on behalf of CSRs employed by Swift in California. Dkt. No. 1. Swift denied Plaintiffs' allegations and raised 29 affirmative defenses. Dkt. 40.

Plaintiff moved to certify a FLSA collective action on July 28, 2014, Dkt. No. 29. Swift then moved to dismiss the complaint. Dkt. 32. Plaintiff responded to the motion by amending her complaint to address Swift's objections. Dkt. 36. While the Plaintiffs were moving for FLSA Certification, Swift moved the Court to compel four of the opt-in Plaintiffs to bring their claims individually in arbitration. Dkt. No. 41. The Court granted Swift's motion to compel arbitration as to the four Plaintiffs on October 3, 2014. Dkt. No. 63.

On October 30, 2014, the Court granted Plaintiffs' motion for FLSA certification, ordering notice issued to the entire FLSA class, even those who Swift alleged had signed an arbitration agreement. Dkt. No. 67. Pursuant to the Order, Plaintiff issued notice to the class on November 21, 2014 and mailed a reminder

1

post card to non-responding class members thirty days later. Plaintiff has not moved to certify a California state law class action.

Because Court-approved notice was issued to the entire class regardless of who signed an arbitration agreement, the Parties developed a process to avoid filing consents to sue in federal court for CSRs whose claims would have to be brought in arbitration. The process provided that Plaintiffs identify each person seeking to join the action before filing a consent to sue in federal court. Swift then had an opportunity to present signed agreements for anyone seeking to join the action. Plaintiff then had an opportunity to raise any defenses to the enforcement of the agreement. Claims of CSRs who signed an arbitration agreement and did not raise a defense were not filed in federal court. Those CSRs were given the opportunity to bring their claims in arbitration. Claims of CSRs for whom Swift did not present a valid arbitration agreement were filed in this case. Sweeney Decl. ¶ 5.

Seventy-four CSRs brought claims in either this action or in an individual arbitration.[1] One hundred twenty-eight CSRs sought to join this action. Swift presented arbitration agreements for 95 of those 128. Of those 95, 33 did not file their claims in this Court but filed individual arbitrations. An additional 41 CSRs filed their claims in this action. Between the claims brought in arbitration and those brought here, 74 CSRs brought claims related to this litigation. The 74 CSRs who brought claims worked in seven different terminals with most working in one of Swift's customer service centers in Memphis, TN, Greer, SC, or Phoenix, AZ. Sweeney Decl. ¶ 6.

---

[1] Two additional CSRs, Johnson and Miller, brought their claims in individual arbitrations. Their arbitration hearings were the first two scheduled. Swift settled their claims individually apart from this settlement to allow the parties time to focus on settling the balance of the arbitrations. Because Johnson and Miller's claims were resolved apart from this settlement, they are not included in the discussion in this paragraph.

## A.    The Litigation

Although the Parties litigated the class claims on two tracks—individual arbitrations and federal court collective action—the work overlapped in substantial part. Plaintiffs conducted investigations into each Class Member's claims, whether their claims were in arbitration or federal court. Because opt-in and arbitration Class Members often worked in the same terminals, they provided crucial facts and were developed as fact witnesses for each other. Sweeney Decl. ¶ 7. Discovery regarding Swift's wage-and-hour practices, CSR scheduling, CSR job duties, class member supervision, electronic records of hours worked, good faith and willfulness, company depositions, depositions of fact witnesses, depositions of supervisors at Swift's main terminals where many of the class members worked, exhibit and witness lists and summaries pre-trial briefing, and stipulations of fact all applied to claims brought in arbitration and in federal court. As part of this discovery, the Plaintiffs deposed eleven witnesses including four 30(b)(6) designees and seven managers/supervisors who worked in terminals located in Memphis and Illinois. At the time the case settled, Plaintiffs had scheduled and were prepared to take several additional depositions at locations around the country. Because Plaintiffs worked in different terminals throughout the country, Plaintiffs took discovery in many different locations. Swift also took depositions, deposing four CSRs who worked in terminals located in Illinois, South Carolina, and Tennessee. Sweeney Decl. ¶ 8.

Thirty-three class members brought their claims in individual arbitrations before the American Arbitration Association. The Parties selected arbitrators, submitted case management plans, participated in case management conferences, and scheduled merits hearings in 23 arbitrations. The hearings were scheduled to begin in June 2015 and continued into the spring of 2016. In each of the 23 cases, Claimants provided Swift with an explanation of their claims, sought and received discovery, and provided damage calculations under both the FLSA and any applicable state law. In several cases, the Parties noticed and conducted depositions

and engaged in motion practice including summary judgment briefing on state law issues. Sweeney Decl. ¶ 9.

The Parties litigated the action in federal court as well. In addition to responding to Swift's motions to dismiss and to compel arbitration, Plaintiffs successfully moved for certification of the FLSA collective action. They also engaged in extensive discovery for the opt-in Plaintiffs in the collective action in federal court as well. Plaintiffs served discovery demands on Swift, including interrogatories, requests for documents and ESI, and requests to admit. Swift produced thousands of pages of documents and ESI, including wage records. Also, in order to resolve discovery disputes before upcoming arbitration hearings, CSRs moved to compel documents. In this case, Swift served individual discovery demands on the Plaintiff and each opt-in. While Plaintiffs objected, Swift was permitted to take individualized discovery from all of the Plaintiffs. Dkt. 88. Sweeney Decl. ¶ 10.

## B.   Settlement

After actively and aggressively litigating this case and 33 individual arbitrations for more than a year, the Parties agreed to mediate the claims of all the opt-in plaintiffs and individual arbitration claimants on the eve of the first arbitration hearing. The parties conducted additional discovery to prepare for the mediation. Using that discovery combined with individual Class Member interviews, Plaintiffs' Counsel developed a damages model that calculated each Class Member's damages on a week-by-week basis. Sweeney Decl. ¶ 11. On August 19, Counsel provided Swift with damage calculations showing $3,928,912 in Class damages with counsel's fees and costs listed separately. The damages represented the maximum amount each Class Member could recover if he or she prevailed at trial on every issue. Sweeney Decl. ¶ 12.

The Parties attended a day-long mediation on September 11, 2015 in Phoenix, Arizona, before a well-respected and experienced mediator, the Honorable Stephen

H. Scott from Scott, Skelly & Muchmore, LLC. Although the Parties did not reach a settlement during the mediation, the Parties continued negotiations. Finally, after ten days of additional negotiations, the Parties agreed on a monetary value for the settlement. Over the next few months, the Parties negotiated the non-monetary settlement terms. Sweeney Decl. ¶ 13.

Each Class Member's recovery, whether the claims were brought in federal court or in arbitration, was individually calculated at the maximum statutory recovery based on his or her number of weeks worked, hours worked each week, rate of compensation, and any applicable state law damages in addition to FLSA damages. The settlement incorporated the risks for each claim including: 1) the risk that Swift would be successful with its affirmative defense that Plaintiffs were FLSA exempt under one of the white-collar exemptions; 2) the risk that class members would not be able to prove all the overtime hours they claimed to have worked; 3) the risk that Swift would be able to calculate back overtime wages on a half-time basis (thereby reducing back wages and liquidated damages by more than one-third); 4) the risk that class members would not be able to establish a third year of FLSA liability by proving that Swift willfully violated the law; 5) the risk that Swift would be able to avoid liability for liquidated damages; and 6) the risk that class members would not able to establish the prerequisites for state law claims. The damage calculation also included a multiplier for the value of receiving payment without having to wait for the litigation to take its course. The damages model applied the various risk discounts to determine a fair settlement on behalf of the class members. Attorneys' fees and costs were provided on a separate line from the aggregate Class Member damages. Sweeney Decl. ¶ 14.

Ultimately, Swift agreed to pay $3,587,250 to resolve the claims of the 74 class members including the fees and costs associated with the claims. Under the allocation, Class Members recover $2,345,147.57 in back wages and statutory damages; one-third of the total settlement, $1,195,750.00, is allocated as attorneys'

fees; $31,352.43 is allocated as costs (although costs of the action actually exceed that amount), and $15,000 is allocated as service payments for the Named Plaintiff in the federal court case and an arbitration claimant who acted as a class representative throughout the litigation and settlement negotiations. Sweeney Decl. ¶ 15.

Each Class Member received an individual settlement agreement that provided the specific amount the Class Member will receive in unpaid wages and liquidated damages, and the specific amount Swift will pay in attorneys' fees and costs apportioned to their claim. The individual Settlement Agreements were accompanied by a letter from Counsel explaining the total amount of the settlement and how the settlement was allocated among Class Members, attorneys' fees and costs, and service payments. Plaintiffs' Counsel has been in communication with all 74 Class Members and responded to any of their questions and concerns. All of the Class Members approved their recovery, the settlement terms, and the amount of fees, costs, and service payments. Sweeney Decl. ¶ 16.

In return for their recovery, each Class Member agrees to release claims "based on the Company's failure to pay her overtime wages and any related claims regarding wages or classification that were raised in the Complaint in this action." Depending on the state in which the Class Member worked, the agreement also provides specific language for any state wage and hour claims that the Class Member released. The release does not apply to any claims arising after the date the Class Member signs the agreement. Sweeney Decl. ¶ 17.

In addition to the class' monetary recovery, Swift changed its pay practices after the Parties' settlement. As of November 1, 2015, Swift reclassified CSRs as non-exempt under the FLSA. As a result Swift now pays CSRs overtime wages when they work more than 40 hours in a workweek. The reclassification to non-exempt employees is a benefit to many of the class members who continue to work for Swift and to their co-workers. Sweeney Decl. ¶ 18.

Every one of the 74 Class Members agreed to the settlement and signed an individual settlement agreement. Class members who brought their claims in arbitration have already received their settlement payments and those claims have been dismissed. The opt-in Plaintiffs in this action now ask the Court to approve their settlements. Upon the Court's approval the claims administrator will distribute the remainder of the settlement fund. Sweeney Decl. ¶ 19.

## II.   LEGAL STANDARD

The FLSA was designed to protect workers from "substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981) *quoting* 29 U.S.C. § 202(a). Thus, in order to protect workers, typically a FLSA claim cannot be waived or settled except in two circumstances. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The exceptions are (1) that the Secretary of Labor supervises the back wage payments or (2) that the court approves the proposed settlement between the employer and employees. 29 U.S.C. § 215(b); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982).[2]

While the Ninth Circuit has not established the criteria that a district court must consider in evaluating an FLSA settlement, most courts have adopted the *Lynn's Food Stores* standard. See *Otey v. CrowdFlower, Inc.*, 12 Civ. 05524–JST, 2014 WL 1477630, at *3 (N.D. Cal. 2014) (collecting cases). Under *Lynn's Food Stores* an FLSA settlement must (1) involve the resolution of a bona fide dispute over an FLSA provision and (2) the settlement must be fair and reasonable.

---

[2] The Fifth Circuit has found that under some circumstances, private FLSA settlements can bind parties even without court or Department of Labor approval. *See Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 795, 184 L. Ed. 2d 583 (U.S. 2012), (citations omitted).

*Goodwin v. Citywide Home Loans, Inc.*, 8:14 Civ. 00866-JLS-JCG, Doc. 66, p. 4
(C.D. Cal Nov. 2, 2015) (quoting *Lynn's Food Stores); Trinh v. JPMorgan Chase &
Co.,* 07 Civ. 01666, 2009 WL 532556, at *1 (S.D. Cal. Mar. 03, 2009); *Lee v. The
Timberland Co.*, C 07-2367, 2008 WL 2492295, at *2 (N.D. Cal. Jun 19, 2008); *Yue
Zhou v. Wang's Rest.*, C 05-0279 PVT, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8,
2007). A court's involvement in the settlement of FLSA claims "has less to do with
the due process rights of those to be bound by a settlement, and more to do with the
named plaintiffs' interest in vigorously pursuing the litigation and the district court's
interest in 'managing collective actions in an orderly fashion." *Trauth v. Spearmint
Rhino Companies Worldwide, Inc.*, EDCV 09-01316-VAP, 2012 WL 4755682, at
*5 (C.D. Cal. Oct. 5, 2012); accord *Goodwin*, 8:14 Civ. 00866-JLS-JCG at p. 3;
*Campanelli v. Hershey Co.*, C 08–1862 BZ, 2011 WL 3583597, at *1 (N.D. Cal.
May 4, 2011). "'If a settlement in an employee FLSA suit does reflect a reasonable
compromise over issues . . . that are actually in dispute,' the district court may
'approve the settlement in order to promote the policy of encouraging settlement of
litigation.'" *Otey v. CrowdFlower, Inc.*, 12 Civ. 05524-JST, 2016 WL 304747, at *3
(N.D. Cal. Jan. 26, 2016) quoting *Lynn's Food Stores*, 679 F.2d at 1354.

### A.   A Bona Fide Dispute Exists Between the Parties

This litigation included several bona fide disputes ranging from whether Class
Members are due overtime wages at all to the correct measure of damages. The
issues were actively litigated in arbitrations across the country and in federal court
over the course of more than a year. For example, Swift denied that Class Members
were due any overtime wages at all and maintained throughout the litigation that
CSRs were properly classified as exempt from the FLSA and state law overtime
requirements. Dkt. 40, Twelfth and Twentieth Affirmative Defenses. It raised an
affirmative statute of limitations defense that could have reduced recovery of FLSA
claims from three to two years. Dkt. 40, Second Affirmative Defense. See 29 U.S.C.
§ 255 (providing for a two-year statute of limitations unless employee can establish

employer acted willfully). Also unresolved was whether the fluctuating workweek method of calculating damages (FWW) would apply. While District Courts within the Ninth Circuit have rejected the retroactive application of the FWW in misclassification cases (see, e.g., *Wallace v. Countrywide Home Loans Inc.*, SACV 08–1463–JST (MLGx), 2013 WL 1944458 (C.D. Cal. Apr. 29, 2013)), had the FWW been applied it could have reduce recoveries by more than one-third. Swift also raised a good faith defense to paying liquidated damages. Dkt. 40, Ninth Affirmative Defense. Moreover, Class Members had an affirmative burden to establish the overtime hours that they worked and Swift's knowledge of the work, Dkt. 40, Eleventh Affirmative Defense, and all the prerequisites of their claims under the wage-and-hour laws of Arizona, California, Illinois, and South Carolina. See, e.g., Dkt. 40, Fifteenth and Sixteenth Affirmative Defenses. See, *Goodwin v. Citywide Home Loans, Inc.*, 8:14 Civ. 00866-JLS-JCG, Doc. 66, p. 4 (C.D. Cal Nov. 2, 2015) ("Given that several Plaintiffs worked remotely and Citywide did not maintain employee time records, Plaintiffs would face obstacles when establishing damages"). There is no question that bona fide disputes exist between the Parties.

## B.    The Proposed Settlement Is Fair and Reasonable

In determining fairness, courts consider the settlement negotiations between the parties, the settlement amount to be paid to class members, the individual settlement amounts to each class member, the scope of the release, and the litigation risks. *Ambrosino v. Home Depot U.S.A, Inc.*, 11 Civ. 1319 L MDD, 2014 WL 3924609, at *1 (S.D. Cal. Aug. 11, 2014); *Goudie v. Cable Commun., Inc.*, 08 Civ. 507-AC, 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009). All these factors establish this settlement as fair.

### 1.    The Settlement Is the Result Of Arms'-Length Negotiations

When a settlement is the result of arm's-length negotiations and with the assistance of a mediator then there is a presumption that the settlement "to be the product of serious, informed, non-collusive negotiations." *Nen Thio v. Genji, LLC*,

14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014). See also, *Lewis v. Wells Fargo & Co.*, 08 Civ. 2670, Doc. 315, p. 4 (N.D. Cal. April 29, 2011) ("The assistance of an experienced mediator in the settlement process confirms that the Settlement is non-collusive"); *Diaz v. Scores Holding Co., Inc.,* 07 Civ. 8718, 2011 WL 6399468, at *2 (S.D. N.Y. Jul.11, 2011) ("In FLSA settlements . . . arm's length negotiations involving counsel and a mediator raise a presumption that the settlement achieved is procedurally fair, reasonable, adequate, and not a product of collusion.") Here, the proposed Settlement resulted after significant litigation followed by months of arm's length negotiations between experienced counsel with the assistance of an experienced mediator after the litigation had proceeded to a stage where both sides could assess their risks and liability and the parties. Accordingly, there is a presumption that the settlement is fair and reasonable. *Lewis v. Wells Fargo & Co.*, 08 Civ. 2670, Doc. 315, p. 4 (N.D. Cal. April 29, 2011).

## 2.     Plaintiffs' Litigation Risks Are Significant

FLSA settlements are fair and reasonable when plaintiffs' counsel considers the various risks and uses the employees' individual wage and hour data. *Ambrosino v. Home Depot U.S.A, Inc.*, 11 Civ. 1319 L MDD, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014); *Hand v. Dionex Corp.*, 06 Civ. 1318-PHX-JAT, 2007 WL 3383601, at *1 (D. Ariz. Nov. 13, 2007) (settlement was fair because "the distribution directly relates to each Plaintiff's length of employment with Defendant."). As described above, this case involved several bona fide disputes, anyone of which could have substantially reduced the class recovery. The Settlement reflects these litigation risks. *Lewis,* p. 4 (finding a settlement was fair and reasonable in part because the allocation was related to the risks in the case).

## 3.     Plaintiffs' Recovery Is Fair and Reasonable

Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal.

2004). In this case, each Class Member will recover a significant percentage of their total maximum damages. The average recovery is $28,771.77, and on average Class Members recover almost 60% of the maximum damages that they could have received if they prevailed at trial on every aspect of their claims. Sweeney Decl. ¶ 20. The percentage of recovery is well within the range that courts approve. *See, Goodwin v. Citywide Home Loans, Inc.*, 8:14 Civ. 00866-JLS-JCG, Doc. 66, pp. 5-6 (C.D. Cal. Nov. 2, 2015) (approving recovery of 24% to 51% of maximum); *Ma v. Covidien Holding, Inc.*, 12 Civ. 02161-DOC (RNBx), 2014 WL 360196, at *5 (C.D. Cal. 2014) (9.1% of the total value of the action was "within the range of reasonableness"); *Jones v. Agilysys, Inc.*, 12 Civ. 03516 SBA, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (approving settlement of between 30% to 60% of recoverable damages); *Ambrosino v. Home Depot U.S.A, Inc.*, 11 Civ. 1319 L MDD, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014) (finding recovery of 47% of maximum damages is a fair compromise). Moreover, the actual amount of recoveries under the settlement range from $500 to $93,960. Sweeney Decl. ¶ 21. Such recoveries are well above average recoveries in wage-and-hour actions. See, NERA Economic Consulting, "Trends in Wage and Hour Settlements: 2015 Update," http://www.nera.com/publications/archive/2015/trends-in-wage-and-hour-settlements-2015-update.html, (the overall average per plaintiff settlement value in wage-and-hour settlements during the period 2007-2015 was $1,097).

Not only does the settlement recover a significant amount for each Class Member and a large percentage of their total possible claim, it also provides them with a recovery without having to go through a prolonged litigation process and bear the risks of being unsuccessful. Accordingly, the settlement amount is fair and reasonable.

### 4.      The Settlement's Release Provision Is Proper

Courts also review the scope of the release in evaluating whether the settlement is reasonable. If the release tracks the breadth of the allegations in the

action then courts find that the release is proper. *Goodwin v. Citywide Home Loans, Inc.*, 8:14 Civ. 00866-JLS-JCG, Doc. 66, p. 6 (C.D. Cal. Nov. 2, 2015); *Ambrosino v. Home Depot U.S.A, Inc.*, 11 Civ. 1319 L MDD, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014) (finding that the revised release "appropriately track[ed] the breadth of Plaintiffs' allegations"). Here, the release is narrowly tailored to the claims that were raised or could have been raised in the case. Class Members will release only their claims related to Swift's failure to pay overtime wages. Further, the release only extends until the date that they signed the settlement agreement. Thus, the release confirms that the settlement is fair and reasonable.

## C.   The Service Awards to the Named Plaintiff and Arbitration Representative Are Fair And Reasonable

The settlement provides for service payments of $10,000 to the Named Plaintiff Flores and $5,000 to Gwen Cecil, an arbitration claimant who participated in the prosecution of the claims and the negotiation of settlement. "Incentive awards are fairly typical in class action cases [and] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (incentive awards are appropriate in FLSA collective actions for the same reasons they apply in Rule 23 class actions).

Named Plaintiff Flores represented the CSRs by spending considerable time working with Plaintiffs' counsel educating counsel on CSR's job duties, scheduling, and compensation, developing and then amending the class action complaint, successfully seeking FLSA class certification, challenging Swift's efforts to force class members to arbitration, modeling damage calculations, participating in discovery and settlement negotiations, and ultimately concluding a successful settlement for the class. Although trial was not necessary, she provided testimony in

support of Plaintiffs' motion to certify the FLSA class and was prepared to testify at trial. Sweeney Decl. ¶ 22. Flores also bore the risk of retaliation by publicly bringing claims against a major industry player. *Stuart v. Radioshack Corp.*, 07 Civ. 4499 EMC, 2010 WL 3155645, at *7 (N.D. Cal. Aug. 9, 2010) (named plaintiffs bear "the risk to the class representative in commencing suit, both financial and otherwise [and] the notoriety and personal difficulties encountered by the class representative."); see also, *Velez v. Majik Cleaning Service, Inc.*, 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783, at *7 (S.D. N.Y. June 25, 2007) (In the employment context in particular, a named plaintiff takes a significant risk to her reputation in the industry).[3]

Although not a named plaintiff, Cecil acted as a class representative in many ways. She cooperated with counsel throughout the litigation with respect to her claims and those of the Class. She was among the first opt-ins to the federal action. Before her claims were sent to arbitration, she spent significant time helping Counsel understand the class claims and develop the motion to certify the FLSA collective action, and she provided supporting testimony for that action. The motion was ultimately successful and ensured that the entire class received notice of the opportunity to join the case. She was deposed and her arbitration was one of the first scheduled for hearing. She provided extraordinary services in the settlement negotiations by making herself available throughout the process to advise Counsel on fact and settlement issues. She was the only Class Member who traveled to Arizona to participate in the mediation with Swift. Sweeney Decl. ¶ 24.

---

[3] Although Flores had left Swift's employ when she brought this case, she used her middle name in the caption to avoid the risk of retaliation by future employers who might discover that she brought claims against a former employer through internet searches. Despite the threat, when Swift moved to compel her to file using her first name, she complied to ensure the collective action went forward. Sweeney Decl. ¶ 23.

1    Together, Flores and Cecil's efforts allowed 74 CSRs to recover unpaid
2    overtime wages. Their actions also led to Swift's decision to reclassify CSRs as
3    FLSA non-exempt. As a result, CSRs who work for Swift across the country are
4    now eligible to receive overtime wages.

5    The service payments sought here, $10,000 and $5,000, are lower than other
6    awards approved by other federal judges in this Circuit. See, e.g., *Stevens v.*
7    *Safeway, Inc.*, 2:05 Civ. 01988-MMM-SH, Doc. 338, p. 20 (C.D. Cal. Feb. 25,
8    2008) (approving service payments of $20,000 and $10,000 in an FLSA collective
9    action settlement); *Graham v. Overland Solutions, Inc.*, 10 Civ. 0672 BEN, 2012
10   WL 4009547, at *8 (S.D. Cal. Sept. 12, 2012) (awarding $25,000 to each named
11   plaintiff); *Lewis v. Wells Fargo & Co.*, 08 Civ. 2670, Doc. 315, p. 4 (N.D. Cal. April
12   29, 2011) (approving service payments in the amount of $22,000 and $20,000);
13   *Glass v. UBS Fin. Services, Inc.*, 06 Civ 4068 MMC, 2007 WL 221862, at *17
14   (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009 (unpublished)
15   (approving enhancement awards of $25,000 each for four named plaintiffs in a Rule
16   23 wage and hour settlement); *Curtis-Bauer v. Morgan Stanley & Co. Inc.*, C-06-
17   3903 TEH, 2008 U.S. Dist. LEXIS 91465, at *3 (N.D. Cal. Oct. 22, 2008)
18   (approving a $25,000 service award to named plaintiff in employment
19   discrimination class action settlement); *Garner v. State Farm Mut. Auto. Ins. Co.*, 08
20   Civ. 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010)
21   ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive
22   awards of $20,000 or more") (collecting cases); *Glass v. UBS Fin. Servs., Inc.*, C-
23   06-4068 MMC, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) aff'd, 331 F.
24   App'x 452 (9th Cir. 2009) (approving payments of $25,000 to each named plaintiff);
25   and *Satchell v. Fed. Express Corp.*, C-03-2659 SI, C-03-28 SI, 2007 WL 1114010,
26   at *5-6 (N.D. Cal. Apr. 13, 2007) (preliminarily approving awards of up to $30,000
27   each to class representatives and up to $5,000 each to 18 class members who signed
28   declarations and were deposed). Moreover, the aggregate amount of service

awards—$15,000—is less than 0.5% of the total settlement value of $3,587,250. Flores' settlement is approximately one-third of the average Class Member recovery and Cecil's is less than 18% of the average recovery.

Not only are the service awards well within the norm of those regularly awarded, all of the Plaintiffs were informed of the service payments and approved them by signing their settlement agreements without objection.

## III.   THE COURT SHOULD APPROVE THE AGREED UPON ATTORNEYS' FEES AS REASONABLE

Because the FLSA is a remedial statute designed to protect workers and guarantee that minimum labor standards are applicable across the economy, fair compensation for attorneys who take on such litigation furthers the FLSA's purpose. *See A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work"). Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discourage future misconduct of a similar nature. *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 338-39 (1980). Section 216(b) of the FLSA provides that where an employee prevails in an action attorneys' fees under FLSA are mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261, fn. 34 (1975); *Yue Zhou v. Wang's Restaurant*, 05 Civ. 0279 PVT, 2007 WL 2298046, 1 (N.D. Cal. Aug. 8, 2007) ("Because a court supervised settlement of FLSA overtime claims is ultimately reduced to a judgment, under the FLSA an award of reasonable fees is mandatory.").

The Court has discretion to approve fees as a percentage of a settlement fund, so long as the award is reasonable. *Elliott v. Rolling Frito-Lay Sales, LP*, 11 Civ. 01730 DOC, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014); *Campbell v. C.R. Eng., Inc.,* 2:13 Civ. 00262, 2015 WL 5773709, at *6 (D. Utah Sept. 30, 2015)

1  (applying percentage of the fund method for FLSA collective action). Attorneys'
2  fees of one-third of the settlement fund in this case are reasonable.

3      As per the fee agreement Class Members struck with Plaintiffs' Counsel,
4  attorneys' fees are one-third of the total settlement, $1,195,750. Each Class Member
5  is allocated a prorate share of fees and costs based on the amount of their individual
6  recovery.

7          **A.**    **The Attorneys' Fees Are Reasonable Because All the**
8              **Plaintiffs Agreed to Them**

9      As a preliminary matter, attorneys' fees equal to one-third of the settlement
10  fund are reasonable because all the Plaintiffs agreed to pay them when they joined
11  the action and subsequently approved the actual amount fees when they signed their
12  settlement agreements. Not only did each individual settlement include the specific
13  amount of fees and costs attributed to that Class Member, but the settlement
14  agreements were accompanied by a letter from Plaintiffs' Counsel explaining the
15  allocation of the settlement fund including the amount of fees and costs. All of the
16  Plaintiffs signed and returned their settlement agreements. Sweeney Decl. ¶ 25.
17  *Ambrosino v. Home Depot U.S.A, Inc.*, 11 Civ. 1319 L MDD, 2014 WL 3924609, at
18  *2 (S.D. Cal. Aug. 11, 2014); *Banales v. Autoclaims Direct, Inc.,* 3:11 Civ. 02914,
19  Doc. 63, p. 5 (Dec. 20, 2012) ("the Court notes that each Plaintiff was involved in
20  the settlement process, and each has reviewed and agreed to the settlement terms.")

21          **B.**    **Fees of One Third of the Settlement Fund Method Are**
22              **Reasonable**

23      Courts regularly find that one-third of a settlement fund is a reasonable fee
24  recovery in FLSA cases. See, e.g., *Goodwin*, pp. 6-7; *Ambrosino v. Home Depot*
25  *U.S.A., Inc.*, 11 Civ. 1319 L(MDD), 2014 WL 3924609, at *2 (S.D. Cal. 2014)
26  (awarding fees of 33.3% in an FLSA settlement); *Boyd v. Bank of Am. Corp.*, 13
27  Civ. 0561-DOC, 2014 WL 6473804, at *12 (C.D. Cal. Nov. 18, 2014) (same);
28  *Rodriguez v. SGLC Inc.*, 2:08 Civ. 1971-MCE-KJN, 2014 WL 229221, at *2 (E.D.

Cal. Jan. 17, 2014) (approving attorneys' fees in the amount of 34% of the settlement). While the Ninth Circuit recognizes a loose benchmark of 25% of a fund as attorneys' fees for Rule 23 class actions where the settlement involves passive plaintiffs, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015), "in most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 08-01520 SC, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009); *see also Vandervort v. Balboa Capital Corp.*, 8 F.Supp.3d 1200, 1209 (C.D. Cal. 2014) ("in smaller cases—particularly where the common fund is under $10 million—awards more frequently exceed the benchmark"). Moreover, FLSA collective action settlements are different from Rule 23 classes in that each Plaintiff has joined the action and there are no passive plaintiffs. *Ambrosino v. Home Depot U.S.A., Inc.*, 2014 WL 3924609, at *2 (S.D. Cal. 2014) (finding 33.3% attorneys' fees reasonable in an FLSA settlement where "each plaintiff has approved this amount"). Here, all the Plaintiffs agreed to a one-third contingency and reaffirmed the fees in executing their settlement agreements.

Courts in this Circuit consider several factors to determine if a percentage fee award is reasonable, including

> (1) the result obtained; (2) counsel's efforts, experience, and skill; (3) the complexity of the issues; (4) the risks of non-payment assumed by counsel; (5) the reaction of the class; (6) non-monetary benefits, such as clarification of certain points of law; and (6) comparison with the lodestar.

*Khanna v. Intercon Sec. Sys., Inc.,* 2:09 Civ. 2214 KJM EFB, 2014 WL 1379861, at *12 (E.D. Cal. Apr. 8, 2014) order corrected, 2:09 Civ. 2214 KJM EFB, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015).

The Court should approve the agreed-upon fees because Plaintiffs' Counsel achieved an excellent result for the Plaintiffs in this case. The Class Members' recoveries average almost 60% of the greatest possible recovery and the average

1  recovery here is far greater than the average FLSA recovery nationwide. Moreover,
2  as a result of this litigation Swift now pays CSRs overtime wages for hours worked
3  over 40 in a workweek. This confers a substantial additional benefit on Plaintiffs
4  currently working as CSRs with Swift. Not only was the result excellent, but
5  Counsel achieved it within less than two years from filing the complaint.

6  Courts throughout the country have recognized Plaintiffs' Counsel's skill and
7  experience in FLSA litigation. See, e.g., *Bredbenner v. Liberty Travel, Inc.*, 09 Civ.
8  1248 MF, 2011 WL 1344745, at *20 (D. N.J. Apr. 8, 2011) ("Based on the Court's
9  experience in supervising this litigation, [Getman & Sweeney] has demonstrated the
10  utmost skill and professionalism in effectively managing these consolidated actions
11  and bringing them to a successful conclusion.") See also, Sweeney Decl. ¶ 26.
12  Counsel expended significant efforts litigating this case and simultaneously
13  litigating 33 individual arbitrations throughout the country. It was only through
14  these efforts that Counsel was able to achieve a favorable settlement for all the Class
15  Members. Sweeney Decl. ¶ 27.

16  This case involved complex factual and legal questions involving not only
17  FLSA issues, but complex procedural issues regarding collective litigation and
18  arbitration. *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 743 (1981)
19  ("FLSA claims typically involve complex mixed questions of fact and law"). In
20  addition to the FLSA claims, Class Members brought individual claims under wage-
21  and-hour laws of four different states. Swift raised 29 affirmative defenses, many
22  raising complex issues of fact and law. The motions for FLSA certification and to
23  compel arbitration raised complex legal issues. The case also involved complex
24  issues regarding the discovery and analysis of electronically stored information for
25  the purpose of determining the hours Class Members worked. Sweeney Decl. ¶ 28.
26  Given the complexity and number of legal and factual questions in the case, these
27  factors strongly support approving the one-third contingency fee agreement.
28

The fees sought are reasonable because Plaintiffs' Counsel took substantial risk in taking on the representation. Plaintiffs' Counsel did not receive any fees for litigating the case or receive reimbursement for their out of pocket costs. Plaintiffs' counsel alone undertook the financial risk of unsuccessful litigation. Under the terms of the agreement, if Plaintiffs had been unsuccessful, Plaintiffs' Counsel would not have recovered any fees or costs. Counsel stood to gain nothing in the event the case was unsuccessful and would have lost the firm's investment in the case, overhead and salaries required to pay attorneys and paralegals with excellent credentials and experience. Any loss in compensation is even more significant because Getman & Sweeney is a relatively small firm, consisting of only six attorneys. Sweeney Decl. ¶ 29. *Boyd v. Bank of Am. Corp.*, 13 Civ. 0561-DOC, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) ("Firms of this size face even greater risks in litigating large class actions with no guarantee of payment.")

One-third fee recovery is reasonable because all of the Class Members, whether opt-in Plaintiff or arbitration claimant, agreed to it when they joined the case and reaffirmed that agreement by signing their individual settlement agreements. Thus the unanimous positive reaction from the entire class favors approval. *Ambrosino v. Home Depot U.S.A, Inc.*, 11 Civ. 1319 L MDD, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014); *Banales v. Autoclaims Direct, Inc.,* 3:11 Civ. 02914, Doc. 63, p. 5 (Dec. 20, 2012) ("the Court notes that each Plaintiff was involved in the settlement process, and each has reviewed and agreed to the settlement terms.")

The agreed-upon fees are reasonable because Plaintiffs' Counsel's efforts produced benefits beyond the monetary recovery. As a result of the litigation, Swift no longer classifies its CSRs as exempt employees. Class Members that continue to work for Swift as CSRs will benefit because they will now receive overtime wages for overtime work. *Boyd v. Bank of Am. Corp.*, 13 Civ. 0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (finding that reclassification as non-

exempt employees is a non-monetary benefit). Moreover, CSRs who are not part of this class also will benefit as will society from achieving the goals of the FLSA. 29 U.S.C. § 202.

Plaintiffs' Counsel's lodestar establishes that fees of one-third of the settlement fund are reasonable. The lodestar is the reasonable hourly rate for the work performed multiplied by the number of hours reasonably expended on the litigation. *Costa v. Commissioner of Social Sec. Admin.*, 690 F.3d 1132, 1136 (9th Cir. 2012). Counsel's lodestar in this case is $832,284. It is calculated based on Counsel's hourly rates ranging from $85 for clerical work to $625 for Dan Getman, an attorney with more than 25 years litigating FLSA claims. Sweeney Decl. ¶ 30. Such rates have been approved as reasonable in this District in wage-and-hour case. *Boyd v. Bank of Am. Corp.,* 13 Civ. 0561-DOC, 2014 WL 6473804, at *11 (C.D. Cal. Nov. 18, 2014) (finding $600 per hour for partner who graduated from law school in 2000; $500 for an associate who graduated in 2002; $450 per hour for an associate who graduated in 2007, $350 per hour for 2012 law school graduate; and $150 per hour for paralegals reasonable in wage and hour case); *Elliott v. Rolling Frito-Lay Sales, LP*, 11 Civ. 01730 DOC, 2014 WL 2761316, at *10 (C.D. Cal. June 12, 2014) (finding hourly rates between $700 and $500 reasonable in a wage-and-hour case). Moreover, Getman & Sweeney's billing rates are regularly approved by federal district courts throughout the country. Sweeney Decl. ¶ 31.

The amount of work Counsel expended litigating these claims is reasonable too. To date Plaintiffs' Counsel spent a total of 1,051 attorney hours and 2,422 paralegal and clerical hours bringing the action to a successful conclusion, and additional work will be required to carry out the settlement process. As discussed above, this matter involved many complex factual and legal issues under both state and federal laws, litigation of a federal court FLSA collective action and 33 individual arbitrations, and sophisticated settlement negotiations. All of Counsel's work was reasonably expended in bringing this case to a successful conclusion.

Sweeney Decl. ¶ 32. *Costa v. Commissioner of Social Sec. Admin.*, 690 F.3d 1132, 1136 (9th Cir. 2012) (courts should defer to the "winning lawyer's professional judgment as to how much time he was required to spend on the case.") *citing Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Fees of one third of the settlement fund, $1,195,750, represent 1.43% of Plaintiffs' Counsel's lodestar of $834,923. Courts regularly approve lodestar multipliers to reflect the risks in contingency cases. Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). For these reasons, courts routinely enhance lodestar amounts based on multipliers ranging from 2 to 4 or even higher. *See Id.* (approving multiplier of 3.65); *Boyd v. Bank of Am. Corp.*, 13 Civ. 0561-DOC, 2014 WL 6473804, at *11 (C.D. Cal. Nov. 18, 2014) (approving multiplier of 2.58); *Van Vranken v. Atl. Richfield Co.,* 901 F.Supp. 294, 298 (N.D. Cal. 1995) (noting that multipliers in the 3-4 range are common in class action lodestar awards); *Craft v. Cnty. of San Bernardino*, 624 F.Supp.2d 1113, 1125 (C.D. Cal. 2008) (awarding multiplier of 5.2 and collecting cases with cross-check multipliers ranging from 4.5 to 19.6).

Accordingly, the Court should approve the agreed upon fees of one-third the settlement fund as reasonable.

## C.    Costs

The Settlement's provision for reimbursement of costs is appropriate. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Media Vision Tech Sec. Litigs.*, 913 F. Supp. at 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co*., 396 U.S. 375, 391-92 (1970)). To be reimbursable, requested costs must be relevant to the litigation and reasonable in amount. *In re Media Vision Tech Sec. Litigs.*, 913 F. Supp at 1366; *cf.*

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (holding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation).

Plaintiffs' Counsel has already incurred $31,916 in expenses such as filing fees, service of the complaint, copies, deposition transcripts, travel, FOIA requests, postage, and mediation fees and there will be additional costs—already more than the $31,352.43 recovered under the settlement agreements. All of these costs were necessary to the prosecution of the litigation and were incurred reasonably, and Counsel anticipates incurring additional costs related to the case. Sweeney Decl. ¶ 33. Each settlement agreement provided the specific share the Plaintiff was responsible for, and all of the Plaintiffs approved of the counsel's costs. Accordingly, these costs are reimbursable. *Ambrosino v. Home Depot U.S.A, Inc.*, 11 Civ. 1319 L MDD, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014).

### D.    Dismissal of the Rule 23 Class Claims Without Prejudice Is Proper

Plaintiffs also move to dismiss the Rule 23 California class claims without prejudice. Federal Rule of Civil Procedure 23(e) states that the "claims, issues, or defenses of a certified class may be [ ] voluntarily dismissed [ ] only with the court's approval." Fed. R. Civ. P. 23(e). Approval is also necessary to dismiss a class before the class is certified. *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989); *Luo v. Zynga Inc.*, 13 Civ. 00186 NC, 2014 WL 457742, at *3 (N.D. Cal. Jan. 31, 2014). The Court considers whether the "proposed settlement and dismissal are collusive or prejudicial to absent putative class members." *Luo v. Zynga Inc.*, 13 Civ. 00186 NC, 2014 WL 457742, at *3 (N.D. Cal. Jan. 31, 2014). For that evaluation, the

> court should inquire into possible prejudice from (1) class
> members' possible reliance on the filing of the action if they are
> likely to know of it either because of publicity or other

1           circumstances, (2) lack of adequate time for class members to

2           file other actions, because of a rapidly approaching statute of

3           limitations, (3) any settlement or concession of class interests

4           made by the class representative or counsel in order to further

5           their own interests.

6   *Luo v. Zynga Inc.*, 13 Civ. 00186 NC, 2014 WL 457742, at *3 (N.D. Cal. Jan. 31,

7   2014) *quoting*, *Diaz*, 876 F.2d at 1408 (citations omitted).

8        As an initial matter, Plaintiffs do not believe the California class will meet the

9   numerosity requirement. Pursuant to the Court's order regarding FLSA notice, Swift

10  identified 13 potential Class Members including the Named Plaintiff who worked in

11  California during the applicable statute of limitations. At least seven of the 13

12  signed arbitration agreements and would not be eligible to be class members.

13  Sweeney Decl. ¶ 34. Therefore, at most six potential class members exist including

14  the Named Plaintiff. Absent extraordinary circumstance, courts typically find that

15  such a number does not satisfy numerosity. *Gomez v. Rossi Concrete, Inc.*, 270

16  F.R.D. 579, 588 (S.D. Cal. 2010) ("classes of fifteen or less are too small");

17  *McCowen v. Trimac Transp. Services (W.), Inc.*, 14 Civ. 02694-RS, 2015 WL

18  9311914, at *4 (N.D. Cal. Dec. 23, 2015) (less than 21 class members is too small).

19  Furthermore, each of the potential class members received notice of the opportunity

20  to bring their claims in this action. Although some responded but elected not to join

21  the action, only three did not respond at all. Sweeney Decl. ¶ 35.

22       Turning to the factors in *Diaz*, dismissing the California state class claims

23  here does not prejudice the potential class members. First, there is no evidence that

24  the California class members relied on the Court in certifying the California claims.

25  Ten of the 13 potential class members contacted counsel and considered bringing

26  claims. The three others did not seek to join the case or even contact Plaintiffs'

27  Counsel despite notice of the opportunity to join the litigation. Sweeney Decl. ¶ 36.

28  If those three received notice, they would not have relied on being passive plaintiffs

because the Notice did not state that their California claims may be protected under a potential Rule 23 California action. Instead, it clearly stated that in order to preserve their rights they had to opt-in to the case. Non-responding class members were also mailed a postcard that stated:

> This is a reminder that if you want to participate in the lawsuit,
> you must return your completed Consent to Sue form no later
> than 1/20/15

Thus, if the three non-responding potential class members received notice, they would not have relied on the action to assert their passive class claims. If they did not receive notice, it is unlikely they would have relied on the action because there was no significant media publicity in this case. Sweeney Decl. ¶¶ 37 - 39. *Luo v. Zynga Inc.*, 13 Civ. 00186 NC, 2014 WL 457742, at *4 (N.D. Cal. Jan. 31, 2014) ("The lack of publicity makes it unlikely that similarly situated class members knew of the present lawsuit and relied on it for vindication of their own rights.")

Nor are the three non-responding potential California class members prejudiced by a rapidly approaching statute of limitations. The California statute of limitations is tolled from the time Plaintiffs commenced the case. *Luo v. Zynga Inc.*, 13 Civ. 00186 NC, 2014 WL 457742, at *4 (N.D. Cal. Jan. 31, 2014); *Dunn v. Teachers Ins. & Annuity Assn. of Am.*, 13 Civ. 05456-HSG, 2016 WL 153266, at *7 (N.D. Cal. Jan. 13, 2016). If the three relied on this action and decide to bring their claims, they may seek the benefit of the tolling period.

Finally, the claims of the three remaining members are not compromised because Plaintiffs did not settle their claims and the class claims are dismissed without prejudice. *Id.* Plaintiffs' counsel did not agree to waive their claims in the settlement. Those three class members retain their rights to pursue their California wage and hour claims.

Thus, the Court should dismiss the Rule 23 class without prejudice.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court approve the agreed upon settlement, including the allocations to the Plaintiffs, the service awards, and the attorneys' fees and costs. Plaintiffs also respectfully request that the Court dismiss the Rule 23 class because numerosity is not met and there is no prejudice to the class.

Dated: March 31, 2016

Respectfully Submitted,

By: /s/ Michael J.D. Sweeney
Michael J.D. Sweeney
Matt Dunn
Getman & Sweeney, PLLC
9 Paradies Lane, New Paltz, NY 12561
Tel: (845) 255-9370
msweeney@getmansweeney.com
mdunn@getmansweeney.com

*Attorneys for Plaintiffs*